UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:17-CV-00135-GNS-LKK

DUSTY BASKETTE                                                                                    PLAINTIFF

v.

NANCY A. BERRYHILL, Acting
Commissioner of Social Security                                                              DEFENDANT

# MEMORANDUM OPINION AND ORDER

This matter is before the Court on Plaintiff's Objection to the Magistrate Judge's Report and Recommendation (DN 26). For the reasons stated below, Plaintiff's Objection is **OVERRULED**, the Magistrate Judge's Findings of Fact, Conclusions of Law, and Recommendation ("R. & R.") (DN 25) is **ADOPTED** to the extent not inconsistent with this opinion, Plaintiff's Motion for Summary Judgment (DN 18) is **DENIED AS MOOT**, and Plaintiff's Complaint (DN 1) is **DISMISSED WITH PREJUDICE**.

## I.     BACKGROUND

### A.     Disability

In September 2013, Plaintiff Dusty Baskette ("Plaintiff") applied for disability insurance benefits and supplemental security income. Plaintiff alleged she had become disabled on January 1, 2003, as a result of seizures, hypothyroidism, hyperlipidemia, double pneumonia, hypertension, anxiety, depression, coronary artery disease, migraines, anemia, COPD, degenerative disc disease, and chronic pain disorder. (Administrative R. 146-47, 224-31, DN 15-1 to DN 15-7 [hereinafter R.]). On January 13, 2014, the Social Security Administration

("SSA") notified Plaintiff that her benefits claims had been denied. (R. at 146-57). Plaintiff requested reconsideration via case review on February 19, 2014. (R. at 158). The SSA notified Plaintiff that an independent review by a physician and disability examiner in the state agency found the previous denial of benefits proper. (R. at 161-74). Plaintiff then requested a hearing before an Administrative Law Judge and participated in a hearing before Administrative Law Judge John R. Price ("ALJ") on February 11, 2016. (R. at 64-96, 175-77).

At the hearing, the ALJ took testimony from a vocational expert, William Harpool ("Harpool"). The ALJ described a hypothetical individual with Plaintiff's approximate age, education, work experience, and restrictions—including her capability to perform "simple routine repetitive tasks"—and inquired whether such an individual could perform work in the national economy. (R. at 91-92). Harpool noted jobs such as light unskilled inspecting, bench assembly, and simple hand working jobs, including labeling items, folding, and packing, and referenced each job's Dictionary of Occupational Titles ("DOT") code and number of positions in the region and nationwide. (R. at 92). The ALJ then inquired whether Plaintiffs credentials were consistent with the hypothetical, to which Harpool replied that although "[n]ot necessarily inconsistent[,]" the DOT does not address that, within light work, one could stand six hours, and have the "[o]pportunity to sit a couple hours[,]" but that not all light work positions would accommodate that, reducing the overall number of suitable positions he had previously noted by 20-30 percent. (R. at 92-93). Additional examination by Plaintiff's counsel addressed the limitation to simple routine repetitive work, and inquired whether that limitation "would preclude the ability to perform detailed written and oral instructions," to which Harpool responded, "Detailed. Yes." (R. at 94).

**B.     ALJ's Decision**

Following the hearing, the ALJ denied Plaintiff's claim, reasoning that Plaintiff had not been under a disability from January 1, 2003, through April 14, 2016, the date of the decision. (R. at 64-96). In reaching his decision, the ALJ evaluated Plaintiff's application under the five-step sequential evaluation process promulgated by the Commissioner. (R. at 43-58). First, the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 1, 2003, the alleged onset date. (R. at 45). Second, the ALJ determined that Plaintiff's "degenerative disc disease of the lumbar spine, chronic obstructive pulmonary disease (COPD), conversion disorder/pseudoseizures, and thyroid disorder" were "severe" impairments within the meaning of the regulations. (R. at 45). The ALJ also found that Plaintiff's coronary artery arteriosclerosis, depression, anxiety, migraine headaches, anemia, hyperlipidemia, gastroesophageal reflux disease (GERD), osteoarthritis, and opiate and barbiturate abuse were not severe impairments within the meaning of the regulations. (R. at 46-48). Third, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in Appendix 1.[1] (R. at 48-50). Fourth, the ALJ found Plaintiff has the residual functional capacity ("RFC") to perform light work, subject to limitations.[2] (R. at 50-56).

---

[1] 20 C.F.R. Part 404, Subpart P, Appendix 1 contains the listing of impairments recognized by the SSA that may qualify an individual for benefits.
[2] The ALJ's findings regarding Plaintiff's restrictions read:

> [T]he claimant . . . can lift ten pounds frequently and twenty pounds occasionally, with the option to sit and stand at thirty minute intervals in a day taking a minute or two to change positions, limited to occasional bending, stooping, kneeling, crouching, and crawling, limited to occasional climbing of ramps and stairs, no climbing of ladders, ropes, or scaffolding, no work around hazards such as unprotected heights or dangerous moving machinery, no concentrated exposure to vibration, requires avoidance of hot or cold temperature extremes, no concentrated exposure to dust, gases, or pulmonary irritants, is capable to performing simple routine repetitive tasks, work should be a low stress

3

Relying on Harpool's testimony, the ALJ found Plaintiff unable to perform any of her past relevant work as a cashier. (R. at 56). Fifth, the ALJ considered Plaintiff's residual functional capacity, age, education, and past work experience, as well as Harpool's testimony. (R. at 56-57). The ALJ concluded that Plaintiff was capable of performing a significant number of jobs that exist in the national economy and has not been under a "disability," as defined in the Social Security Act,[3] since the alleged onset date. (R. at 57). Plaintiff filed a request for review, which the Appeals Council denied. (R. at 1-9, 222-23).

C. **Plaintiff's Federal Claim**

Plaintiff filed suit in this Court seeking judicial review of the Commissioner's final decision. (Compl., DN 1). Following the filing of the administrative record and fact and law summaries from each party, Magistrate Judge King recommended that the final decision of the Commissioner be affirmed. (R. & R. 1-5).

Plaintiff objected to Magistrate Judge King's recommendation; the Commissioner did not respond. (Pl.'s Obj., DN 26). This matter is ripe for adjudication.

II. **JURISDICTION**

The Court has jurisdiction to examine the record that was before the Commissioner on the date of the Commissioner's final decision and to enter judgment affirming, modifying, or reversing that decision. *See* 42 U.S.C. § 405(g).

---

    environment with little to no change in routine on a day to day basis and no fast paced production rate or quota work demands.

(R. at 56).
[3] The term "disability" is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. §§ 423(d)(1)(A) (Title II); *see also* § 1382c(a)(3)(A) (utilizing an identical definition of "disability" under Title XVI).

### III.  STANDARD OF REVIEW

District courts review *de novo* the parts of a magistrate judge's R. & R. to which objections are raised, and in doing so may accept, reject, or modify, in whole or in part, the R. & R. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  This differs from the standard applied to the Commissioner's decision.  That decision, rendered by an ALJ, is reviewed to determine "whether it is supported by substantial evidence and was made pursuant to proper legal standards." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (citations omitted).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks omitted) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  Where substantial evidence supports the ALJ's decision, a court is obliged to affirm. *Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987) (citation omitted).  A court should not attempt to second-guess the factfinder with respect to conflicts of evidence or questions of credibility. *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007) (citation omitted).

### IV.  DISCUSSION

The Magistrate Judge recommended that the final decision of the Commissioner, via the ALJ's decision, be affirmed and Plaintiff's Complaint be dismissed.  (R. & R. 1-5).  Plaintiff objects, arguing that Magistrate Judge King ignored relevant precedent of this Court and "relie[d] on conjecture and *post hoc* argument in recommending affirmance" of the ALJ's decision. (Pl.'s Obj. 1).  She argues that the Residual Functional Capacity ("RFC") assigned by the ALJ, limiting Plaintiff to performance of "simple, routine, repetitive work tasks" as supported by the testimony of the vocational expert, is inconsistent with the ultimate finding that Plaintiff

could perform several jobs that require more complex, detailed reasoning as defined in the DOT. (Pl.'s Obj. 1).

The DOT describes the General Educational Development component of a claimant's abilities as having three divisions: Reasoning Development, Mathematical Development, and Language Development. U.S. Dep't of Labor, *Dictionary of Occupational Titles*, app. C (rev. 4th ed. 1991). The Reasoning Development division has six levels, in ascending order of ability. *Id.* Level 1 includes the ability to "[a]pply commonsense understanding to carry out simple one- or two-step instructions[,]" whereas Level 2 includes the ability to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions." *Id.* The positions of final inspector, bench assembler, and folder, referenced by Harpool, are all described in the DOT as having a Reasoning Development requirement of Level 2. *Dictionary of Occupational Titles* 686.685-030, 706.684-042, 727.687-054.

Unlike the DOT's more precise levels system, the SSA's regulations separate a claimant's ability to understand and remember things and to concentrate into just two categories: "short and simple instructions" and "detailed" or "complex" instructions. 20 C.F.R. § 416.969a(c)(1)(iii); *see also* 20 C.F.R. pt. 404, subpart P, app. 1, Listing 12.00C(3) ("You may be able to sustain attention and persist at simple tasks but may still have difficulty with complicated tasks"). As noted by our sister court:

> To equate the Social Security regulations['] use of the term "simple" with its use in the DOT would necessarily mean that all jobs with a reasoning level of two or higher are encapsulated within the regulations' use of the word "detail." Such a "blunderbuss" approach is not in keeping with the finely calibrated nature in which the DOT measures a job's simplicity.

*Russell v. Comm'r of SSA*, No. 1:13-CV-291, 2014 U.S. Dist. LEXIS 43646, at *40 (N.D. Ohio Mar. 31, 2014) (quoting *Meissl v. Barnhart*, 403 F. Supp. 2d 981, 984 (C.D. Cal. 2005)). The *Russell* court relied heavily upon *Meissl* in its consideration of this issue, quoting:

> Even more problematic for Meissl's position is that she ignores the qualifier the DOT places on the term "detailed" as also being "uninvolved." This qualifier certainly calls into question any attempt to equate the Social Security regulations' use of the term "detailed" with the DOT's use of that term in the reasoning levels. Instead of simply seeking to equate the two scales based on their serendipity that they happen to employ the same word choice, a much more careful analysis is required in comparing the claimant's RFC with the DOT's reasoning scale.
>
> Here, the ALJ found that Meissl could perform not just simple tasks but also ones that had some element of repetitiveness to them. A reasoning level of one on the DOT scale requires slightly less than this level of reasoning. While reasoning level two notes the worker must be able to follow "detailed" instructions, it also (as previously noted) downplayed the rigorousness of those instructions by labeling them as being "uninvolved."

*Id.* at *40-41 (quoting *Meissl*, 403 F. Supp. 2d at 984). The court in *Meissl* thus concluded that the ALJ's limitation for the plaintiff was consistent with Level 2 reasoning. *Meissl*, 403 F. Supp. 2d at 984-85; *see also Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005) (holding that "level-two reasoning appears more consistent with Plaintiff's RFC" to "simple and routine work tasks"); *Money v. Barnhart*, 91 F. App'x 210, 215 (3d Cir. 2004) ("Working at reasoning level 2 would not contradict the mandate that her work be simple, routine[,] and repetitive."). Relying on the same reasoning, the court in *Russell* concluded that the ALJ's finding that the plaintiff could perform simple one- and two-step instructions and simple routine tasks was not inconsistent with the ability to perform jobs requiring Level 2 reasoning, and the ALJ therefore did not err by relying on the vocational expert's testimony that the plaintiff could perform several such jobs. *Russell*, 2014 U.S. Dist. LEXIS 43646, at *35-36, 42-43.

Plaintiff objects to the R&R's use of *Russell*, and argues that the Court should instead look to *Lee v. Colvin*, No. 1:12CV-00161-HBB, 2013 U.S. Dist. LEXIS 63565 (W.D. Ky. May 3, 2013). In *Lee*, the ALJ posed a hypothetical that included the limitation that the individual could "understand, remember[,] and carry out simple instructions," to which the vocational expert responded that the position of surveillance monitor would be appropriate. *Id.* at *25 n.3.

7

Plaintiff argues that, in *Lee*, this Court concluded "that remand was required so that the [SSA] could resolve the vocational conflict between an RFC limitation to simple instructions, and a contradictory finding that he could perform at a reasoning level that went beyond 'simple' as defined by the DOT." (Pl.'s Obj. 1-2 (citations omitted)).

Plaintiff's argument ignores that the position at issue in *Lee* of surveillance-system monitor required Level 3 reasoning, not Level 2. *Lee*, 2013 U.S. Dist. LEXIS 63565, at *27. Further, the ALJ in *Lee* "did not ask the vocational expert whether her opinion conflicted with the DOT description of the job she suggested." *Id.* at *29. In this case, the ALJ *did* ask Harpool whether his opinion was consistent with the DOT, which Harpool addressed as to changing positions, but did not state any inconsistency as to reasoning. (R. at 92-93). As in *Meissl* and *Russell*, the vocation testimony in this case was that Plaintiff could not perform *detailed work* but was not precluded from other requiring *detailed but uninvolved instructions*. (R. at 94).

The Court therefore agrees with Magistrate Judge King that the ALJ's finding that Plaintiff can perform the jobs proposed by the vocational expert. Based upon this determination, Plaintiff is not disabled as defined by the Social Security Act.

## V. CONCLUSION

For the reasons discussed above, **IT IS HEREBY ORDERED** as follows:

1. Plaintiff's Objection to the Magistrate Judge's Findings of Fact, Conclusions of Law, and Recommendation (DN 26) is **OVERRULED**;

2. Magistrate Judge King's Findings of Fact, Conclusions of Law, and Recommendation (DN 25) are **ADOPTED** to the extent not inconsistent with this opinion;

8

3. Plaintiff's Motion for Summary Judgment (DN 18) is **DENIED AS MOOT**; and

4. Plaintiff's Complaint (DN 1) is **DISMISSED WITH PREJUDICE**.

**Greg N. Stivers, Judge
United States District Court**

August 22, 2018

cc: counsel of record